IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Johnny Timpson, by and through his, Conservator, Sandra Timpson, and Sandra Timpson, in her individual capacity,<br><br>        Plaintiff,<br><br>v.<br><br>Henry McMaster, *et al.*,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A No. 6:16-cv-1174-DCC<br><br><br><br><br>**OPINION AND ORDER** |

Federal courts resolve cases and controversies, not crusades. That is a *constitutional directive*. Despite this well-established limitation on federal jurisdiction, Plaintiffs' counsel in this case have sought to wage a ground war against the South Carolina disability and Medicaid system. In the process of this crusade, Plaintiffs' counsel have neglected to focus on what is important: Johnny Timpson. Within the tens of thousands of pages of filings on the docket lies a potentially meritorious (and relatively straightforward) case involving the care, treatment, and provision of services to Johnny Timpson. However, that is not the case Plaintiffs' counsel intended to present to the jury. Instead, Plaintiffs' counsel sought to personally attack various state officials and government programs, interrogate the then-United Nations' Ambassador about her social life, and subpoena the sitting Governor of the State of South Carolina to a trial about which he had *no personal knowledge*. Despite this, through extensive Court involvement in pretrial matters, the jury was presented with a full and robust case related to the alleged negligent care and abuse of Johnny Timpson.

1

Make no mistake about it, the disability system in South Carolina is broken and is in need of repair. Programs are underfunded. Waitlists are long. And patients are not adequately informed about the programs for which they qualify. Recognizing this situation, Plaintiffs' counsel began filing cases more than a decade ago seeking to fix some of these problems. After protracted litigation, the United States Court of Appeals for the Fourth Circuit issued *Doe v. Kidd*, 501 F.3d 348 (4th Cir. 2007), which recognized a private right of action under the Medicaid Act and 42 U.S.C. § 1983 for the failure to provide individuals with services they are entitled to with reasonable promptness. Several appeals later, *Doe*'s counsel[1] prevailed and were justifiably awarded significant attorneys' fees and costs by the Fourth Circuit. *See Doe v. Kidd*, 656 F. App'x 643 (4th Cir. 2016).

Since that time, Plaintiffs' counsel have continued to file lawsuits on behalf of individuals with disabilities. *See, e.g., Kobe et al. v. Mann et al.*, No. 3:11-cv-01146-MBS (D.S.C. 2011); *Stogsdill et al. v. Sebelius et al.*, No. 3:12-cv-00007-JFA (D.S.C. 2012); *Valentine et al. v. State of South Carolina et al.*, No. 3:18-cv-00895-JFA (D.S.C. 2018). Throughout this and other litigation, Plaintiffs' counsel have maintained that these cases are essentially enforcement actions as her clients are all acting as "private attorneys general."[2] Despite the numerous cases filed in the last decade, this is the first such case

---

[1] Doe was represented by Plaintiffs' lead counsel—Patricia Harrison—and Armand Derfner.

[2] In this case, Plaintiffs' counsel have referred to Plaintiffs as "private attorneys general." It is true that the Supreme Court of the United States has used the phrase "private attorney general" to justify awarding attorneys' fees to a prevailing plaintiff in civil rights cases. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968). The Court notes, however, that Plaintiffs ubiquitous invocation of this doctrine is misplaced, as they certainly do not have the same enforcement authority as a duly elected or appointed attorney general.

to go to trial before a jury.  From inception, however, this case has been riddled with procedural and substantive defects, many of which are discussed below.

Plaintiffs got their day in court so that a jury could answer a series of truly important questions about Johnny Timpson's care, treatment, and provision of services.  The jury had a full and fair opportunity to evaluate Plaintiffs' claims under the appropriate legal standards and with extensive leeway afforded to Plaintiffs' counsel; however, the jury determined that a defense verdict was appropriate.  Following the jury's verdict, Plaintiffs filed a Motion Pursuant to Rule 59, Rule 50, and Rule 60 ("Motion to Reconsider").  ECF No. 386.  After evaluating the filings of the parties and the evidence in this case, the Court DENIES Plaintiffs' Motion for the reasons set forth below.

## **BACKGROUND**

This case was removed to this Court from the Court of Common Pleas for Greenville County, South Carolina.  ECF No. 1.  On July 18, 2016, Plaintiffs filed an Amended Complaint, which named fourteen defendants: (1) Nikki Haley, Governor of the State of South Carolina; (2) the Anderson County Disabilities and Special Needs Board ("ACDSNB"); (3) Horace Padgett, Chairman of ACDSNB; (4) Dale Thompson, former executive director of ACDSNB; (5) John King, former director of ACDSNB; (6) Tyler Rex, Director of ACDSNB; (7) the South Carolina Department of Disabilities and Special Needs ("DDSN"); (8) William Danielson, Chairman of DDSN Commission; (9) Beverly Buscemi, Director of DDSN; (10) the South Carolina Department of Health and Human Services ("DHHS"); (11) Christian Soura, Director of DHHS; (12) Alexander McNair, Chairman of the Board of Thrive Upstate, formerly known as the Greenville County Disabilities and Special Needs Board ("Thrive Upstate"); (13) John Cocciolone, Director of Thrive Upstate;

and (14) Unknown Actors at DHHS, DDSN, ACDSNB, and/or Thrive Upstate. ECF No. 41. The Amended Complaint alleged five causes of action against *each Defendant*:[3] (1) violation of the South Carolina Tort Claims Act ("SCTCA"); (2) violation of the Americans with Disabilities Act ("ADA"); (3) violation of Section 504 of the Rehabilitation Act; (4) violation of the South Carolina Administrative Procedures Act and Separation of Powers; and (5) violation of 42 U.S.C. § 1983. *Id.*

The Amended Complaint is barely cognizable.[4] Federal law *requires* that a plaintiff plead a plausible claim for relief against any named defendants. The rules are fairly simple—the Complaint must contain "*a short and plain statement of the claim* showing that the [plaintiff] is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8 (emphasis added). The pleadings in this case fall short of that standard, as Plaintiffs were still trying to articulate *who* they were suing and *what* they were suing about more than *a year* into this litigation.

For example, on February 16, 2017, after she was confirmed as the U.S. ambassador to the United Nations, Defendant Haley asked that Governor Henry

---

[3] Plaintiffs simply refer to "the Defendants" in each of these causes of action, greatly complicating pretrial matters.

[4] In *Valentine*, the Honorable Joseph F. Anderson, Jr., noted concerns that this Court echoes: "This Court has spent a considerable amount of time reviewing the arguments contained in the memoranda in support of the motions to dismiss, plaintiff's counsels' response thereto, along with the prolix complaints involved in this action. The Court's task has been made extremely difficult by reason of the fact that the Amended Complaint contains enormous amounts of information that is inappropriate in a traditional federal court complaint." *Valentine*, No. 3:18-cv-00895-JFA, ECF No. 40 at 2 (D.S.C. Nov. 28, 2018).

McMaster be substituted as a party defendant. ECF No. 78. In response, Plaintiffs took the position that Defendant Haley may have also been named in her individual capacity as well as her official capacity. ECF No. 80. To that end, Plaintiffs contended they were "entitled to take the deposition of Nikki Haley to establish facts alleged in their Amended Complaint and to determine whether she may be liable, in her individual capacity, for any of the claims alleged in the amended complaint."[5] *Id.* at 2. It is important to note that Plaintiffs only named "Nikki Haley, Governor of the State of South Carolina" as a party defendant and made no reference to Defendant Haley in her individual capacity.

On February 23, 2017, the Office of the Governor filed a Motion for a Protective Order regarding Plaintiffs' Notice of Deposition of Defendant Haley, arguing that Governor McMaster was automatically substituted as a party when he became Governor. ECF No. 82; *see* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is *automatically substituted* as a party." (emphasis added)). The Motion further noted that counsel for the Office of the Governor "does not have the ability to control or produce Nikki Haley for a deposition" and stated that "Plaintiffs' counsel ha[ve] not served a subpoena on Nikki Haley to date." ECF No. 82 at 4. Succinctly summarizing the problem with Plaintiffs' position, the Motion concluded by stating: "Plaintiffs should not be allowed to take this 'fishing expedition'

---

[5] Plaintiffs' response to the Motion to Substitute outlines, in detail, the steps Plaintiffs had taken to depose then-Ambassador Haley "to establish what personal involvement she had and what actions she took – or failed to take – to protect the health, welfare and rights of DDSN consumers." ECF No. 80 at 3. Yet, the response does not set forth any actual allegations from the Amended Complaint that were made against Defendant Haley in her individual capacity.

deposition of the former Governor and current United Nations Ambassador when the Plaintiffs' Complaint fails to even remotely establish a basis for liability against Nikki Haley [individually]." *Id.* at 4–5. Similarly, in its Reply to Plaintiffs' Response to Motion for Protective Order Regarding Defendant Haley, the Office of the Governor declared:

> Plaintiffs' Complaint does not contain any allegations that Nikki Haley is individually liable. Plaintiffs have sued Haley in her official capacity only. Despite the absence of any allegations of individual liability, Plaintiffs maintain that they are entitled to take Haley's deposition in an effort to determine the <u>possible</u> existence of <u>a new</u> claim against Haley for individual liability. To expand the scope of discovery to issues <u>not encompassed</u> by the pleadings and allow a <u>fishing expedition</u> deposition in the hopes of establishing a new claim is not permissible.

ECF No. 104 at 2.

A torrent of motions and briefing followed over the next two months, and the Court[6] took the matter under consideration. Approximately four months after briefing concluded, the Court issued an Order on August 24, 2017, which: (1) denied Defendant Haley's Motion to Dismiss; (2) granted in part and denied in part Defendant Haley's Motion to Substitute; (3) denied Defendant Haley's Motion for a Protective Order; and (4) held in abeyance the United States' Motion for a Protective Order.[7] ECF No. 113. The Court

---

[6] The Order was issued by the Honorable Mary Geiger Lewis, who was the original judge assigned to this case. *See* ECF No. 113.

[7] The United States' Motion for a Protective Order is not particularly germane to the background of this case, as the parties ultimately reached an agreement to resolve the Motion. *See* ECF No. 127. However, by way of background, on March 31, 2017, the United States moved for a protective order "to prevent the depositions of two Federal employees, Ms. Jackie Glaze and Ms. Kenni Howard, and to prevent further production of documents pursuant to a vague document request that is unduly burdensome." ECF No. 105 at 1. Specifically, the United States contended that Plaintiffs' deposition notices failed to comply with the *Touhy* regulations applicable to the United States Department of Health and Human Services ("HHS"). *See* 45 C.F.R. §§ 2.1, 2.4 (outlining the procedures for requesting testimony from an employee or former employee of HHS when the United States or a federal agency is not a party to the litigation). Additionally, the United States

further ordered Plaintiffs to personally serve Defendant Haley with a copy of the Court's August 24, 2017 Order and a subpoena for Defendant Haley's deposition not later than October 6, 2017.  ECF No 129.

Thereafter, Defendant Haley appeared for the first time through personal counsel (as opposed to counsel for the Office of the Governor) and filed a Motion for Clarification, or Alternatively, for Other Relief and Motion to Stay.  ECF No. 133.  Essentially, Defendant Haley "request[ed] an Order declaring that she [was] not a party to this action."  ECF No. 133-1 at 1.  Defendant Haley argued that she "was never served with the above-captioned action or previously informed that allegations may [have] be[en] directed toward her in her individual capacity."  *Id.*  In response, the Court stayed the action, and Plaintiffs filed a response in opposition to Defendant Haley's Motions.  ECF Nos. 135, 137.

Plaintiffs' response focused largely on generic language from Defendant Haley's Answer and affirmative pleading of a qualified immunity defense.  *See* ECF No. 137 at 2–4.  Specifically, Plaintiffs quoted from two affirmative defenses in Defendant Haley's Answer.  *See* ECF Nos. 44 at 8 ("To the extent that this Defendant *may be sued in her individual capacity*, she would allege that this action is barred as a result of the discretionary functions entrusted to her." (emphasis added)); 15 ("That this Defendant, *if named in her individual capacity*, is entitled to qualified immunity." (emphasis added)).  Plaintiffs' response also accused Defendant Haley of deliberately ignoring the Court's Orders, and inexplicably referenced (and attached) several of Defendant Haley's

---

averred that Plaintiffs' document request was unduly burdensome in that it "essentially requested every document that CMS has related to any Medicaid waiver request made by the State of South Carolina beginning in 2007."  *Id.* at 1–2.

Facebook posts. *See* ECF No. 137 at 13 ("The same week Defendant Haley was served with this Court's order to attend a deposition by October 24, she found time to socialize with a DDSN Commissioner who had flown to New York. Defendant Haley referred to this Commissioner on [F]acebook as her 'dear friend' with whom she 'could not stop laughing,' within days of being served with a subpoena to attend a deposition in this case. The next day, Defendant Haley found more free time to give this DDSN Commissioner a private tour of the United Nations before the Commissioner returned to South Carolina."). What was absent from Plaintiffs' response, however, was any clear explanation of what part of Plaintiffs' Amended Complaint actually pled a cause of action against Defendant Haley in her individual capacity.

While Defendant Haley's Motions were pending, Plaintiffs filed a Petition for Interim Fees and Costs. ECF No. 143. Despite the fact that Plaintiffs had not prevailed on their federal causes of action, Plaintiffs' counsel contended that they were due a substantial fee award because a DHHS Hearing Officer determined that Plaintiff Johnny Timpson "had demonstrated that the State's 28 hour cap on personal care attendant services places him at risk of institutionalization." *Id.* at 9. This spurred more filings from the parties including a Motion to Strike Plaintiffs' Motion for Attorneys' Fees, a Motion to Stay Plaintiffs' Motion for Attorneys' Fees, and the attendant responses and replies to the pending motions.

On December 15, 2017, in light of the undersigned's judicial confirmation, the case was reassigned from Judge Lewis to the undersigned. ECF No. 152. Because of the complexity of this case, lack of clarity in the pleadings, and large number of pending motions, the Court scheduled a status conference for February 15, 2018. ECF No. 161.

Contemporaneously, the Court issued an Order: (1) dismissing without prejudice Plaintiffs' Motion for Interim Attorneys' Fees; (2) denying as moot the Motion to Strike; and (3) denying as moot the Motion to Stay. ECF No. 162. The Court held that "Plaintiffs have not yet obtained *any relief* in this federal action, and thus cannot be considered a prevailing party." *Id.* at 2. Thereafter, on February 15, 2018, the Court held the previously noticed status conference and hearing, took the pending motions under advisement, and maintained the stay of proceedings. ECF No. 166.

On March 21, 2018, the Court issued an Order holding Defendant Haley's Motion for Clarification in abeyance.[8] ECF No. 170. The Court first noted that it "'has wide latitude in controlling discovery and [its] rulings will not be overturned absent a showing of clear abuse of discretion.'" *Id.* at 5 (quoting *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986)). In light of the extraordinarily unique circumstances then-existing, the Court set forth a detailed procedure that gave Plaintiffs the opportunity to determine whether Defendant Haley had any relevant information about Plaintiff Johnny Timpson, ruling as follows:

---

[8] The Court also granted Plaintiffs' Motion to Substitute "'Joshua Baker with respect to claims brought against Christian Soura in his official capacity as Director of DHHS and to substitute Patrick J. Maley with respect to claims brought against Beverly Buscemi in her official capacity as Director of DDSN.'" ECF No. 170 at 8 (quoting ECF No. 144 at 2) (footnotes omitted). The Court also found good cause to permit Plaintiffs to depose several witnesses from the Centers for Medicare and Medicaid Services "pursuant to Plaintiffs' agreement with the United States." *Id.* at 9. However, the Court denied Plaintiffs' request to take belated depositions of Defendants Baker and Maley, noting that Plaintiffs had ample notice that these witnesses may have had relevant information about the case prior to the expiration of the discovery deadline. *See id.* at 10 (noting that Plaintiffs' included Defendant Maley as a potential witness in their Local Rule 26.03 interrogatory responses and knew about Defendant Baker's involvement in the Governor's budget making process for several years). Finally, the Court gently admonished Plaintiffs' counsel for their *ad hominem* attacks on the qualifications of Defendants Baker and Maley. *Id.*

Under the unique circumstances of this case, the Court finds that Defendant Haley should not initially be required to submit to an oral deposition. Instead, the Court will permit Plaintiffs to submit no more than ten (10) written interrogatories to Defendant Haley within ten (10) days of the date of this Order. Defendant Haley must then answer each interrogatory under oath and provide Plaintiffs with her signed and verified answers within thirty (30) days of receipt of the interrogatories.

After Defendant Haley provides Plaintiffs her sworn answers, the parties are directed to file said answers with the Court and brief the issue of whether summary judgment on Plaintiffs' individual capacity claims is appropriate at that time. See Fed. R. Civ. P. 56(f) (noting that, "[a]fter giving notice and a reasonable time to respond, the court may: . . . (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."). If the Court then finds that summary judgment is not appropriate, the Court will grant Plaintiffs leave to take a full oral deposition of Defendant Haley and will revisit Defendant Haley's request to file a belated responsive pleading and reopen the discovery process.

*Id.* at 6. The Court cited to persuasive authority supporting this approach, *see id.* at 7 (discussing *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997)), and found that the procedure struck "a reasonable balance in permitting Plaintiffs to pursue their theory of individual liability while respecting Defendant Haley's busy schedule as our nation's Ambassador to the Untied Nations."[9] ECF No. 170 at 8. The Court also cautioned the parties not to abuse the discovery process, emphasizing that "it will not tolerate hyperbolic rhetoric by any party involved in this case" and expressing great concern at "[t]he tone and tenor of many of the filings in this case thus far." *Id.*

---

[9] The Court emphasizes that there certainly may be cases where it is appropriate to allow a Plaintiff to depose a sitting Governor or United Nations Ambassador even when those individuals are not parties to the case. However, in order to be a fact witness in a case, the individual must have actual knowledge of facts that are relevant to the case. Here, that simply was not the case. Indeed, the prestige of Defendant Haley's position had no bearing whatsoever on the Court's decision, which was based solely on the total lack of allegations or evidence against Defendant Haley in her individual capacity.

On May 22, 2018, the parties filed a Status Report indicating that Defendant Haley had provided Plaintiffs with verified interrogatory responses. ECF No. 175. Accordingly, the Court directed the parties to file Defendant Haley's interrogatory responses and briefs as to whether summary judgment was appropriate by June 5, 2018. ECF No. 176. "Plaintiffs did not ask *any* questions about Defendant Haley's knowledge of Plaintiff Johnny Timpson's care or the provision of services to him." ECF No. 179 at 9. "Instead, Plaintiffs asked Defendant Haley a variety of questions related to her knowledge, while Governor, of various alleged improprieties in the administration of Medicaid waiver services." *Id.* In light of Defendant Haley's responses and the evidence offered by Plaintiffs, the Court determined "there [was] no evidence Defendant Haley was personally involved in the reduction of Plaintiff Johnny Timpson's services, failure to provide adequate care, or alleged misuse of the administrative review process." *Id.* at 10. Accordingly, the Court granted summary judgment for Defendant Haley.

While the lengthy saga related to Defendant Haley is not directly addressed in Plaintiffs' Motion to Reconsider, the Court believes it is critical to illustrate the practical problems the Court encountered in resolving this case. Indeed, this derivative litigation detracted significantly from the merits of the case and delayed the trial by well over a year. After dealing with the Defendant Haley issues, the Court made a series of rulings on pretrial dispositive motions, which are adequately detailed in prior orders and Court hearings. Following resolution of pretrial matters, the trial in this case began on May 6, 2019, against Defendants DHHS, Christian Soura, Thrive Upstate, Governor McMaster, ACDSNB, DDSN, Dale Thompson, and Beverly Buscemi. During the five-day trial, the Court granted directed verdicts for all Defendants except the following three claims: (1)

violations of the ADA as to Defendant ACDSNB; (2) violations of the SCTCA as to Defendant ACDSNB; and (3) violations of the SCTCA as to Defendant DDSN. ECF Nos. 372-73. On May 10, 2019, the jury rendered verdicts for the remaining Defendants on all claims. *See* ECF No. 383 (verdict form).

On June 7, 2019, Plaintiffs filed a Motion to Reconsider pursuant to Federal Rules of Civil Procedure 50, 59, and 60, which also requested an extension of time or leave to amend the Motion once the trial transcripts are available. ECF No. 386. On June 10, 2019, the Court issued a Text Order, summarily addressing two issues "to avoid unnecessary briefing by the parties." ECF No. 387.

First, the Court noted that "Federal Rule of Civil Procedure 6(b)(2) prohibits a court from extending the time to act under Rules 50(b), 50(d), 52(b), 59(b), 59(d), 59(e), and 60(b)." *Id.* Accordingly, the Court denied Plaintiffs' request for an extension of time to amend their Motion to add "any new legal issues that were not properly raised in Plaintiffs' Motion during the time period prescribed by the Federal Rules of Civil Procedure." *Id.* However, the Court granted Plaintiffs permission to seek leave to file a supplemental brief clarifying any factual issues after reviewing the transcript. *Id.* To date, Plaintiffs' counsel have not ordered a copy of the trial transcript.

Second, the Court summarily rejected Plaintiffs' request to file an "interlocutory appeal" on the issue of Eleventh Amendment immunity.[10] *Id.* In so finding, the Court found that Plaintiffs' request was untimely, procedurally improper, and substantively without merit. *Id.* However, the Court noted that "Plaintiffs are certainly free to raise [the] issue with the Fourth Circuit following resolution of the Motion [to Reconsider]." *Id.*

---

[10] The merits of this issue are addressed below.

Thereafter, Defendants filed five responses in opposition to Plaintiffs' Motion, and Plaintiffs' filed five replies to Defendants' responses. ECF Nos. 390, 391, 393, 395–96, 399–403. After briefing concluded, Plaintiffs submitted a series of three letters offering supplemental authority on various legal issues. ECF Nos. 406–08. In their final letter, on November 15, 2019, Plaintiffs stated that they discovered new evidence that would be "present[ed] to the Court shortly." ECF No. 408. No "new evidence" was forthcoming. Therefore, on December 4, 2019, the Court issued a Text Order directing Plaintiffs to submit their "new evidence" by December 16, 2019, and informing the parties that the record would be closed at that time. ECF No. 413. On December 16, 2019, Plaintiffs filed another letter and hundreds of pages of attachments[11] purporting to constitute this "new evidence." ECF No. 414.

More than seven months have elapsed since Plaintiffs filed their Motion to Reconsider, and the Court has closed all briefing on the matters contained in the Motion. Accordingly, the Court addresses the issues raised by Plaintiffs below.

## **LEGAL STANDARD**

Motions to reconsider are not "opportunities to rehash issues already ruled upon because a litigant is displeased with the result." *R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co.*, No. 4:02-4184-RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006) (citing *Tran v. Tran*, 166 F. Supp. 2d 793, 798 (S.D.N.Y. 2001)). Plaintiffs moved to reconsider pursuant to Federal Rules of Civil Procedure 50, 59, and 60. The legal standards for these rules are well established in this Circuit and set forth below.

---

[11] The attachments included two "newly discovered reports and the calendar of DHHS Director Baker which document his private meetings with DDSN Commissioners . . . ." ECF No 414.

## I. Federal Rule of Civil Procedure 50

"A Rule 50(b) motion should be granted if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999) (citing *White v. County of Newberry*, 985 F.2d 168, 172 (4th Cir. 1993)). When reviewing a district court's decision on a Rule 50(b) motion, appellate courts "view all the evidence in the light most favorable to the prevailing party and draw all reasonable inferences in his or her favor." *Id.* (citing *Austin v. Torrington Co.*, 810 F.2d 416, 420 (4th Cir. 1987)). Moreover, a district court's denial of a motion for a new trial under Rule 50(b) is reviewed for abuse of discretion. *Id.* (citing *Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994)).

## II. Federal Rule of Civil Procedure 59

"The power of a federal judge to grant a new trial on the ground that the verdict was against the weight of the evidence is clear." 11 Fed. Prac. & Proc. Civ. § 2806 (3d ed.). "A motion for a new trial is governed by a different standard from a directed verdict motion." *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989) (citing *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 891 (4th Cir. 1980)). Under Rule 59 of the Federal Rules of Civil Procedure, a trial judge may weigh the evidence and consider the credibility of the witnesses and, if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." *Id.* (citations omitted).

"Rule 59(e) motions will be granted in three circumstances: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). In order to prevail on a "manifest injustice" or "clear error" theory, the prior decision cannot simply be "'just maybe or probably wrong,'" it must "'strike [the Court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 1995 WL 520978, *5 n.6 (4th Cir. 1995)). "If relying on new evidence, 'a party must produce a legitimate justification for not presenting this evidence during the earlier proceeding.'" *Id.* (quoting *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996) (internal quotation marks omitted)). Appellate courts review a district court's denial of a Rule 59(e) motion for abuse of discretion. *Id.* (citing *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002)).

## III.    Federal Rule of Civil Procedure 60

"It is a well settled principle of law that a Rule 60(b) motion seeking relief from a final judgment is not a substitute for a timely and proper appeal." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (citing *Ackermann v. United States*, 340 U.S. 193, 198 (1950). "Therefore, before a party may seek relief under Rule 60(b), a party first must show 'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" *Id.* (quoting *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984). "After a party has crossed this initial threshold, he

must satisfy one of the six specific sections of Rule 60(b)." *Id.* These grounds include: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Federal Rule of Civil Procedure 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b).

"Although Rule 60(b)(6) is a catchall provision which allows a court to grant relief for any reason, case law limits the reasons for which a court may grant relief under Rule 60(b)(6)." *Dowell*, 993 F.2d at 48. A court may grant relief under Rule 60(b)(6) if "such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 615 (1949). However, relief under the catchall provision is only appropriate "when the movant demonstrates 'extraordinary circumstances.'" *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017) (quoting *Dowell*, 993 F.2d at 48).

## ANALYSIS

As stated above, Plaintiffs' Motion to Reconsider first requested an extension of time or leave to amend the Motion once the trial transcripts are available. ECF No. 386. The Court issued a Text Order holding that "Federal Rule of Civil Procedure 6(b)(2) prohibits a court from extending the time to act under Rules 50(b), 50(d), 52(b), 59(b), 59(d), 59(e), and 60(b)." ECF No. 387. Accordingly, the Court denied Plaintiffs' request for an extension of time to amend their Motion to add "any new legal issues that were not properly raised in Plaintiffs' Motion during the time period prescribed by the Federal Rules

of Civil Procedure." *Id.* However, the Court granted Plaintiffs permission to seek leave to file a supplemental brief clarifying any factual issues after reviewing the transcript. *Id.* To date, Plaintiffs' counsel have not ordered a copy of the trial transcript, although Plaintiffs have raised a number of additional issues by way of letters, which are also addressed below.

## I. Jury Instructions Related to *Madison ex rel. Bryant v. Babcock Ctr., Inc.* and *Steinke v. S.C. Dep't of Labor, Licensing, & Regulation*

First, Plaintiffs contend that the Court erred as a matter of law in interpreting *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650 (S.C. 2006) and *Steinke v. S.C. Dep't of Labor, Licensing, & Regulation*, 520 S.E.2d 142 (S.C. 1999). The SCTCA is "the exclusive civil remedy available for any tort committed by a governmental entity, its employees, or its agents except as provided in § 15-78-70(b)."[12] S.C. Code Ann. § 15-78-20(b). To that end, the SCTCA provides a "governmental entity is not liable for a loss resulting from: . . . responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, *except when the responsibility or duty is exercised in a grossly negligent manner.*" S.C. Code Ann. § 15-78-60(25) (emphasis added). Therefore, the only way Plaintiffs could have recovered on their SCTCA claims against Defendants ACDSNB and DDSN was by proving that those defendants were grossly negligent. *See id.* After being presented with all of the evidence in the case, the jury

---

[12] Section 15-78-70(b) of the South Carolina Code provides a very narrow exception to the general rule "if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud actual malice, intent to harm, or a crime involving moral turpitude."

made an affirmative finding that *neither* defendant was grossly negligent. *See* ECF No. 383 at 7 (Question 1 - Verdict Form - ACDSNB); 9 (Question 1 - Verdict Form - DDSN).

Despite the plain and unambiguous language of the SCTCA, Plaintiffs have maintained throughout this case that the Supreme Court of South Carolina lessened the standard of care because DDSN and a group home provider had a "special relationship" with the plaintiff in *Madison*. *See* ECF No. 386 at 8–11. Plaintiffs' argument is illogical and ignores both the plain language of the SCTCA and *Madison*. In fact, in *Madison*, the Supreme Court held "that the issue of whether [DDSN] acted in a grossly negligent manner is a factual issue for a jury." *Madison*, 638 S.E.2d at 661. In accordance with *Madison* and the SCTCA, the Court properly instructed the jury on gross negligence.[13]

As to *Steinke*, Defendants ACDSNB and DDSN correctly point out in their responses to Plaintiffs' Motion to Reconsider that the jury did not reach the issue because it did not find Defendants grossly negligent in the first instance. The Court agrees and rejects Plaintiffs' misplaced argument on this issue.

## II. Eleventh Amendment Immunity

Second, Plaintiffs argue that the Court erred in ruling that Defendants did not waive Eleventh Amendment immunity by removing this case from state court to this Court. As the Court has repeatedly ruled, this issue is controlled by the Fourth Circuit's ruling in *Stewart v. North Carolina*, 393 F.3d 484 (4th Cir. 2005), which specifically *rejected* Plaintiffs' argument. After filing their Motion to Reconsider, Plaintiffs continued to argue

---

[13] Plaintiffs also make cursory arguments as to various other SCTCA exceptions. *See, e.g.,* ECF No. 386 at 10 (challenging Jury Charges 21 and 35). The Court has considered Plaintiffs' arguments on these instructions and adheres to its findings made during the charge conference.

this issue by relying on cases from other circuits. *See* ECF No. 407. The Court acknowledges that there is a circuit split on this issue. *See, e.g., Walden v. Nevada*, 945 F.3d 1088, 1094 (9th Cir. 2019) ("[W]e now hold that a State defendant that removes a case to federal court waives its immunity from suit on all federal-law claims in the case, including those claims that Congress failed to apply to the States through unequivocal and valid abrogation of their Eleventh Amendment immunity."). However, as Plaintiffs candidly acknowledged in a November 15, 2019 letter to the Court, ECF No. 408, the Fourth Circuit recently reaffirmed *Stewart*. *See Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) ("As Passaro points out, the other courts of appeals have split on whether to adopt *Stewart's* holding: some have followed *Stewart*, others have rejected it, and still others have adopted a supposed 'middle ground' . . . Nothing in these out-of-circuit cases makes us inclined to revisit *Stewart* . . . ." (citation omitted)). Accordingly, this Court adheres to the Fourth Circuit's ruling in *Stewart*.

### III. Weight of the Evidence

Third, Plaintiffs contend the Court erred in directing verdicts on all except two claims against Defendant ACDSNB and one claim against Defendant DDSN. Additionally, Plaintiffs argue that the weight of the evidence does not support the verdict. As to the directed verdict issue, the Court incorporates by reference its rulings made during trial. The Court determined that the evidence only supported the submission of three causes of action to the jury: (1) violations of the ADA as to Defendant ACDSNB; (2) violations of the SCTCA as to Defendant ACDSNB; and (3) violations of the SCTCA as to Defendant DDSN. ECF Nos. 372–73. Plaintiffs' case focused on Mr. Timpson's care and treatment while at a facility operated by Defendant ACDSNB. Plaintiffs failed to offer

any evidence whatsoever that Governor McMaster, DHHS, or Thrive Upstate were grossly negligent or violated the ADA. Similarly, Plaintiffs failed to offer any evidence to show that Defendants Dale Thompson or Beverly Buscemi were deliberately indifferent or otherwise violated Plaintiffs' constitutional rights.

As to the weight of the evidence, the Court finds that the jury's verdict is amply supported by the evidence in this case, as substantial evidence was presented to justify the verdict and the verdict is not against the clear weight of the evidence. The jury determined that ACDSNB and DDSN were not grossly negligent and that ACDSNB did not intentionally discriminate or retaliate against Plaintiffs. The evidence at trial showed that Mr. Timpson was injured while in the care of Defendant ACDSNB. However, the clear weight of the evidence does not support a finding that Defendants DDSN and ACDSNB were grossly negligent in their care of Mr. Timpson or that Defendant ACDSNB intentionally discriminated or retaliated against Mr. Timpson. Put differently, if this case was tried nonjury, the Court would have reached the same conclusion as the jury on each claim.[14]

## IV.    Exclusion of Expert and Hybrid Expert Witness Testimony

Fourth, Plaintiffs request a new trial, contending the Court erred as a matter of law in excluding expert and hybrid expert witness testimony. The Court heard extensive argument as to Plaintiffs' proffered experts during trial and held that they were either improperly disclosed or had no relevant testimony that would aid the jury. The excluded

---

[14] In fact, the Court concurs with the jury's finding on every specialized verdict question and commends the jury for reaching a conclusion fully in line with the clear weight of the evidence.

expert testimony related to the disability *system*, and the Court did not exclude *any* relevant, properly disclosed evidence that in any way related to Johnny Timpson.

For example, Plaintiffs have proffered the testimony of Deborah McPherson, Lennie Mullis, and Randy Thomas. ECF No. 373. Plaintiffs set forth twenty-three areas about which Ms. McPherson would have testified. ECF No. 373-1. Johnny Timpson's name is not mentioned in any of these areas; instead, Ms. McPherson was offered as a witness to testify as to systematic problems with the disability programs. This testimony was irrelevant to the claims before the jury because the witness could not testify as to any nexus between these systematic problems and Plaintiffs' alleged injuries. Similarly, Plaintiffs offered the testimony of Randy Thomas, who was offered as a witness about systemic problems at DDSN facilities. *See* ECF No. 373-4 at 1 ("He would have testified about his investigations of DDSN facilities published in the "Unequal Justice" report."). However, Mr. Thomas did not have any information about Mr. Timpson's treatment at the Tiny Greer home.

Plaintiffs also offered the testimony of Lennie Mullis, who they contend is a hybrid expert. Due to her status as a hybrid expert, Plaintiffs contend they did not need to disclose an expert report. Not so. The Court excluded Ms. Mullis's testimony, and in doing so rejected Plaintiffs' argument that she was a hybrid expert immune from disclosure. "[A] hybrid witness may relay factual observations and express opinions flowing from those factual observations given their established expertise." *Nat'l R.R. Passenger Corp. v. Railway Express, LLC*, 268 F.R.D. 211, 216 (D. Md. 2010) (citation omitted). The most common example of a hybrid expert is a treating physician or other healthcare provider who has knowledge of the facts in a case and is able to form opinions

based on their knowledge, skill, and experience. Ms. Mullis does not qualify as a hybrid expert witness. Plaintiffs' proffer bolsters this conclusion, as there is no evidence in the record or proffer that Ms. Mullis has any knowledge of Mr. Timpson's care during the relevant time period. Accordingly, the Court exercised its discretion in excluding irrelevant and improperly disclosed expert testimony. Again, the Court reiterates that this case is about Mr. Timpson, not the systematic deficiencies in the treatment of intellectually disabled persons in South Carolina.

Defendant ACDSNB succinctly summarizes the problem with Plaintiffs' arguments as to the exclusion of expert witnesses:

> The Plaintiffs raise other arguments purporting to support their asking this Court to set aside the jury verdict, such as documents being excluded or supposed expert witnesses being similarly excluded or limited in the scope of their testimony, but those arguments are as diffuse and unfocused now as they were back in April and May when the Parties were attempting to cull through the 200-plus proposed exhibits, which included full depositions, news articles, opinion editorials, a political cartoon, and a photograph of former Governor Haley at dinner with friends. So much time has been wasted reviewing thousands of pages of material that amounted to nothing with regard to any relevance to the claims that were actually distilled from the 35-page, 188-paragraph morass which comprised the Plaintiffs' Amended Complaint, or sitting through hours upon hours of depositions in which the Plaintiffs' names were barely mentioned, if at all.

ECF No. 396 at 11. The unfortunate result of Plaintiffs' counsel's attempts to inundate the trial with irrelevant evidence that had nothing to do with Johnny Timpson is that South Carolina taxpayers had to pay the attorneys' fees Defendants' attorneys necessarily incurred in addressing these irrelevant issues. That money could potentially have been spent fixing the system rather than constantly fighting over irrelevant issues in Johnny Timpson's case.

## V.    Section 1983 Claims

Fifth, Plaintiffs raise a number of issues related to the Section 1983 claims.  As an initial matter, Plaintiffs argument that the Court erred in denying injunctive relief is patently without merit.  There was nothing to enjoin, as Johnny Timpson was provided with the services he was entitled to under the law through the administrative process designed for that purpose.  To the extent Plaintiffs contend the Court should have granted declaratory relief in order to fix the systematic problems with the disability system, Plaintiffs' counsel have failed to seize on the tremendous opportunity *Doe v Kidd* provided for individuals who need services in excess of the waiver program's caps.

The procedural solution to the problems that individuals like Johnny Timpson face is to file a class action for declaratory and injunctive relief so that a court is in a position to issue meaningful relief to a wide class of people.  Recently, the South Carolina Appleseed Legal Justice Center and several other law firms filed a class action pursuant to Federal Rule of Civil Procedure 23(b)(2), seeking to "remedy specific deficiencies in the South Carolina Department of Social Services ("DSS") in order to safeguard and prevent harm to foster children in DSS custody."  *Michelle H. et al. v. Haley et al.*, No. 2:15-cv-134-RMG (D.S.C. 2015), ECF No. 1 at 4.  Counsel in *Michelle H.* brought a declaratory and injunctive civil rights class action pursuant to Section 1983.  Notably, counsel in *Michelle H.* filed a well-organized Complaint, which only named two defendants: Governor Nikki Haley in her official capacity and Acting Director Susan Alford of DSS.  Through collaborative litigation, mediation, and court intervention, the parties reached a settlement agreement and the Honorable Richard M. Gergel, the presiding

judge, continues to hold status conferences to monitor the parties' continued, collaborative work to resolve the problems with the foster system.

Following *Doe v. Kidd*, Plaintiffs' counsel had the same opportunity to file a civil rights class action to try to remedy the root causes of the problem. Rather than doing so, Plaintiffs' counsel have chosen to file a series of individual cases. That is certainly a valid strategic choice, but it ties the hands of judges and juries across the state and essentially precludes obtaining a court monitored consent decree or settlement agreement that would fix the problems with our disability system.

As to the merits of Plaintiffs' Section 1983 claims, the Court granted summary judgment and directed verdicts because Plaintiffs offered no actual evidence that any officials violated the Constitution. To that end, Plaintiffs were given ample opportunity (and leeway) both at the motions stage and at trial to show how any Defendants were liable under Section 1983. They failed to do so.

## VI.    ADA Jury Instructions

Sixth, Plaintiffs claim that the Court erred as a matter of law in charging the jury on the elements of an ADA claim. The Court has reviewed the arguments of counsel and the charges given at trial and finds no such error. The jury was properly charged and substantial evidence justifies the verdict.

## VII.    ADA Statute of Limitations and Discovery Rule

Seventh, Plaintiffs contend the Court erred in failing to apply the discovery rule and ruling that the statute of limitations for ADA violations is one year. The Court held that the statute of limitations for the ADA claims in this case mirror the one-year statute of limitations found in the South Carolina Human Affairs Law. This ruling was in accord with

the longstanding prevailing rule in this District. *See, e.g., Grant-Davis v. S.C. Office of Governor*, No. 2:15-cv-2521-PMD, 2018 WL 1406740, *affirmed by Grant-Davis v. S.C. Office of Governor*, 738 F. App'x 790 (4th Cir. 2018) ("Plaintiff does not point to any law that contradicts this Court's well-settled jurisprudence that a one-year statute of limitations applies to Title II [of the ADA] and Section 504 causes of action." (citing *Cockrell v. Lexington Cty. Sch. Dist. One*, No. 3:11-cv-2042-CMC, 2011 WL 5554811 (D.S.C. Nov. 15, 2011))).

The Court recognizes the Fourth Circuit was recently presented with a case implicating this issue. *See Stogsdill v. Azar*, 765 F. App'x 873, 880 n.2 (4th Cir. 2019). In *Stogsdill*, the Fourth Circuit declined to reach the issue of what the appropriate statute of limitations is in an ADA case in South Carolina. *See id.* The Court notes, however, that it was guided by the Fourth Circuit's opinion in *Semenova v. Md. Transit Admin.*, 845 F.3d 564 (4th Cir. 2017) and this District's well-settled jurisprudence in determining that a one-year statute of limitations applied in this case.[15]

Accordingly, the Court declines to grant a new trial and put the parties (and taxpayers) through the expense of another trial based on dicta in *Stogsdill* that does not invalidate this District's long-standing rule that the ADA is subject to a one-year statute of limitations.

---

[15] The Court recognizes that, very recently, courts within this District have begun adopting a three-year statute of limitations for ADA claims. *See, e.g., Valentine et al. v. State of South Carolina et al.*, No. 3:18-895-JFA, ECF No. 80 (D.S.C. Aug. 6, 2019); *Gresham v. Arclabs, LLC*, No. 9:19-cv-1237-RMG, 2019 WL 3020931 (D.S.C. July 10, 2019). While it is an unpublished opinion, the Court notes that the *Grant-Davis* Order referenced above was affirmed by the Fourth Circuit on October 2, 2018, well after *Semenova* was decided.

**VIII.    Plaintiffs' "Newly Discovered Evidence"**

Finally, Plaintiffs have submitted "new evidence" that they claim warrants a new trial.  *See* ECF No. 414.  This evidence consists of reports about Medicaid funding and calendar entries from a DHHS Director.  This submission has nothing whatsoever to do with Johnny Timpson's case and certainly does not warrant a new trial.

## **CONCLUSION**

For the reasons set forth above, [386] Plaintiffs' Motion to Reconsider is **DENIED**.


IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>
United States District Judge

February 4, 2020
Spartanburg, South Carolina